UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
JUL 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 03-609-GWU

RONALD RUTH,                                                       PLAINTIFF,

VS:                     MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,         DEFENDANT,

INTRODUCTION

Ronald Ruth brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the Court on cross-motions for summary judgment.

APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes,

1

the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(l).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742

2

F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the lack of bilateral manual dexterity compromise a person's ability to do a full range

of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Ruth, a 43 year-old former heavy equipment operator, weigh clerk, and repairman with a high school education, suffered from impairments related to degenerative disc disease of the cervical spine, morbid obesity, sensorineural hearing loss with tinnitus and ear pain, a generalized anxiety disorder, a history of neck pain, right shoulder tendonitis, probable incomplete rotator cuff tear, trivial mitral regurgitation, mild tricuspid regurgitation, mild left atrial enlargement, left ventricular hypertrophy, hypertension, recurrent otitis media, hypercholesterolemia, hyperglycmia, complaints of gout, right shoulder/arm pain, atypical chest pain, two leaky heart valves, bilateral arm/hand numbness/tingling, panic attacks, and insomnia. (Tr. 17, 24). Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 26). Since the available claimant would be able to return to his past work as a weigh clerk, he could not be considered totally disabled. (Tr. 27).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However,

5

the current record also does not mandate an immediate award of DIB. Therefore, the Court must grant the plaintiff's summary judgment motion in so far as it seeks a remand of the action for further consideration and deny that of the defendant.

The ALJ erred in evaluating the medical record. The ALJ relied upon the opinion of Dr. Jorge Baez-Garcia, a non-examining medical reviewer, in determining Ruth's residual functional capacity.[1] Dr. Baez-Garcia opined that the plaintiff would be exertionally restricted to light level work and would also suffer from such non-exertional limitations as (1) restricted ability to push/pull with the upper extremities; (2) an inability to more than occasionally climb ladders, ropes or scaffolds and crawl; and (3) a limited ability to reach with the right arm. (Tr. 115-122). Dr. Baez-Garcia reviewed the record in February of 2001 and, so, did not have the opportunity to see and comment upon the bulk of the medical evidence, particularly from such treating physicians as Dr. Henry Tutt and Dr. Nancy Morris, whose reports were mainly dated after this review occurred.

Dr. Nancy Morris, a treating physician, identified a number of extremely severe physical limitations which were largely attributed to cervical spine problems in July of 2002. (Tr. 221-224). The ALJ rejected Dr. Morris' opinion as binding because he did not believe it was well-supported by objective medical data. (Tr. 19). However, Dr. Morris was the _only_ treating or examining source to identify specific physical restrictions. Dr. Baez-Garcia did not have the opportunity to see and comment upon the opinion of Dr. Morris and neither did Dr. Kenneth Phillips (Tr. 150-157), another non-examining medical reviewer who

---

[1] Dr. Kenneth Phillips, another medical reviewer, identified restrictions concerning stooping and crouching which were not found by Dr. Baez-Garcia or adopted by the ALJ. (Tr. 150-157). Dr. Phillips reviewed the record in May of 2001 and, so, he also did not have the opportunity to and comment upon the bulk of the medical evidence.

6

saw the record in May of 2001. While an ALJ may rely upon the opinion of a non-examiner over an examining source, the non-examiner should clearly state the reasons of his differing opinion. Furthermore, Dr. Morris' opinion does appear to have at least some objective support. The doctor based her opinion upon more recent MRI Scans of the plaintiff's cervical spine than were seen by the medical reviewers. The medical reviewers only saw an October, 2000 MRI Scan. Based upon the October, 2000 MRI Scan, Dr. Henry Tutt, a treating neurosurgeon, recommended conservative treatment in December of 2000. (Tr. 187). However, in October, 2001 following another MRI Scan, the physician noted that the disc protrusion was now more impressive and he advised surgery. (Tr. 158). Under these circumstances, the ALJ should at least have sought the advice of a medical expert who had seen and had the opportunity to comment upon the entire record. Therefore, the ALJ erred in rejecting the findings of Dr. Morris.

The Work History Report indicates that Ruth's past work as a weigh clerk had involved extensive sitting, and standing. (Tr. 79). The severe restrictions concerning the total amount of sitting, standing and walking combined, identified by Dr. Morris, would certainly preclude performance of this past work.[2] Therefore, a remand of the action is required.

The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration. Therefore, the Court must grant the plaintiff's summary judgment motion, in so far as such relief is achieved, and deny that of the defendant. A separate

---

[2]Vocational Expert William Ellis testified at the administrative hearing. He indicated that the claimant's past weigh clerk work could still be performed even with a sit/stand option. (Tr. 291-292). However, Ellis was not asked to consider the limited total amount of time the plaintiff was restricted in these areas by Dr. Morris.

7

judgment and order will be entered simultaneously consistent with this opinion.

This the ___20___ day of July, 2005.

G. WIX UNTHANK
SENIOR JUDGE

8